UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————————

ARRON A. MCCLAIN, also known as
Aaron McClain,

                                        Plaintiff,

        v.                                                              9:17-CV-0046
                                                                        (LEK/ML)

RN JESSICA DUGAN,

                                        Defendant.

—————————————————————————

APPEARANCES:

ARRON A. MCCLAIN
12-B-0683
Plaintiff, *pro se*
Otisville Correctional Facility
Box 8
Otisville, NY 10963

HON. LETITIA JAMES                      JOHN F. MOORE, ESQ.
Attorney General for the                Assistant Attorney General
State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**MIROSLAV LOVRIC**[1]
**United States Magistrate Judge**

### REPORT-RECOMMENDATION AND ORDER[2]

        Plaintiff *pro se* Arron McClain ("McClain" or "Plaintiff"), an inmate who was, at all relevant

—————————————————

        [1]        This case was originally assigned to Magistrate Judge David E. Peebles, but was reassigned to the undersigned upon Judge Peebles' retirement.

        [2]        This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendant

RN Jessica Dugan ("Dugan" or "Defendant") for violations of his rights under the Eighth

Amendment.  Dkt. No. 16 ("Am. Compl.").  Presently before the Court is Defendant's motion

for summary judgment and dismissal of McClain's Amended Complaint pursuant to Rule

56(a) of the Federal Rules of Civil Procedure.  Dkt. No. 106.  McClain filed a response to the

motion and a cross motion for permission to amend his Amended Complaint.[3]  Dkt. No. 113

and Dkt. No. 118 (submission in further opposition).  Defendant submitted a Reply.  Dkt. No.

117.  For the following reasons, it is recommended that Defendant's motion for summary

judgment be granted and McClain's cross motion be granted in part and denied in part.

## I.  BACKGROUND

### A.  Facts[4]

---

[3]    "[G]iven this Court's obligation to construe pro se papers liberally to raise the strongest arguments they suggest," the Court construes McClain's opposition to include a cross-motion to amend. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Moreover, while McClain's cross motion was not properly noticed, Defendant responded to the motion to amend in the Reply Memorandum of Law.  *See* Dkt. No. 117.

[4]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

At the time of the incidents described in the Amended Complaint, McClain was an inmate in the custody of DOCCS and confined at Auburn Correctional Facility ("Auburn C.F."). *See generally*, Am. Compl. The incidents that form the basis of the Amended Complaint occurred during an emergency sick call visit in the evening hours of May 16, 2014. Dkt. No. 16 at 2; Dkt. No. 106-1 at 130, 189-190.[5]

## 1. Medical Treatment

On the morning of May 16, 2014, McClain submitted a sick call request for complaints of pain in his right lower abdomen extending to his testicles.[6] Dkt. No. 106-1 at 137-138; Dkt. No. 106-2 at 9. At 6:00 a.m., Nurse Dugan responded to the request.[7] *Id*. at 138. McClain told Dugan that he had been experiencing pain for four days and was having difficulties when he used the bathroom. Dkt. No. 106-1 at 139; Dkt. No. 106-2 at 9. Dugan provided Colace, hemorrhoidal cream, and Tylenol. Dkt. No. 106-1 at 139-140; Dkt. No. 106-2 at 9. Dugan

---

Defendant filed a Statement of Material Facts. McClain responded and admits the facts contained in certain paragraphs of Defendant's Statement of Material Facts. Additionally, Defendant and McClain annexed exhibits to their submissions. Dkt. No. 106-1 through 106-3; Dkt. No. 113-2; Dkt. No. 117-1. The parties do not object or challenge the authenticity of the documents. Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion. *See U.S. v. Painting known as Hannibal*, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing *Daniel v. Unum Provident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)). In light of the procedural posture of the case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[5]     Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[6]     At the time of the incidents alleged in the operative pleading, Auburn C.F. maintained a procedure for "sick call" requests. Dkt. No. 106-1 at 132. The inmate would submit a sick call slip into the "sick call box" with a description of his ailment. *Id*. at 132-33. After the request was submitted, the sick call nurse would visit with the inmate. *Id*. The sick call procedures could be utilized every day except Wednesday, Saturday, and Sunday. *Id*. at 133; Dkt. No. 117-1 at 5.

[7]     On May 16, 2014, Dugan worked from 6:00 a.m. until 1:00 p.m. Dkt. No. 106-2 at ¶ 7.

3

also scheduled an appointment for McClain with a medical provider on May 20, 2014. *Id.*

At 10:00 p.m. the same evening, McClain reported for emergency sick call with complaints of right testicular pain. Dkt. No. 106-1 at 151-52; Dkt. No. 106-3 at 30. McClain was transported to the medical unit on a stretcher and claimed that his testicle was "swollen and hard." *Id*. McClain saw a male nurse and a female nurse in the medical unit. Dkt. No. 106-1 at 145.

The facts surrounding the 10:00 p.m. emergency sick call visit are largely disputed. The Ambulatory Progress Note, prepared by the male nurse, indicates that McClain's assessment was "negative" and his vitals were normal. Dkt. No. 106-3 at 30. The nurse noted that McClain had a history of the same complaints dating back to 2011 and advised him to return to medical if his symptoms persisted or worsened. *Id*.

Conversely, McClain testified that the female nurse "forcefully dug her fingers into the infected area, forcing the plaintiff to convulse in pain and almost fall[] off the table[.]" Dkt. No. 106-1 at 153-54. McClain grabbed the nurse's arm in an attempt to stop her, causing the officers to "rush" to him and explain that he could not touch the nurse. *Id*. at 154. McClain testified that the female nurse told him there was nothing wrong with him and told him to return to his cell. *Id.* at 155. The female nurse refused to provide ambulatory assistance and "made him walk" back to his cell. *Id*. at 155-56. However, due to intense pain, McClain crawled back to his cell. Dkt. No. 106-1 at 156. From May 16, 2014 until May 19, 2014, McClain remained in his cell unable to move, eat, or drink due to the pain and discomfort. *Id*. at 158.

On May 19, 2014, at 6:00 a.m., Dugan saw McClain at sick call for complaints of right

4

groin pain.  Dkt. No. 106-1 at 161; Dkt. No. 106-2 at 8.  Dugan gave McClain a medical excuse for two days.  *Id*.

On May 20, 2014, at 9:00 a.m., Dr. Cincotta ordered McClain transferred to Auburn Community Hospital for an emergency appendectomy, which was performed on May 21, 2014.[8]  Dkt. No. 106-1 at 165-67.  McClain was discharged from the hospital five or six hours after surgery and, by May 29, 2014, he was walking without difficulty and returned to work. Dkt. No. 106-1 at 168.

## 2. Grievance

On May 24, 2014, McClain filed a grievance related to the events that occurred during emergency sick call on the evening of May 16, 2014.  Dkt. No. 106-1 at 171-72; Dkt No. 106-3 at 23.  McClain did not know the nurses' names and identified them only as "a young male nurse" and a female nurse "in her 40s."  *Id.*  Because the grievance involved allegations against the nursing staff, Nurse Administrator Mary Coryer ("Coryer")[9] was assigned to investigate the complaints.  Dkt. No. 106-3 at ¶ 5.

In June 2014, Coryer interviewed McClain.  Dkt. No. 106-1 at 179; Dkt. No. 106-3 at 11. On June 12, 2014, Coryer prepared a memorandum stating:

> I interviewed Inmate McClain 12B0683 on 6/12/14 in the first aid area of medical at approximately 9:30 am.  This is in reference to grievance AUB 65091-14.
>
> I reiterated the original complaint to Inmate McClain and he could not name the nurse in question except to state it was a female and he had no issue with the male nurse who did treat him professionally.  He stated her actions delayed treatment for

---

[8]  Cincotta is not named as a defendant in this action.

[9]  Coryer is not named as a defendant in this action.

5

> appendicitis which resulted in emergency surgery. Her conduct was "harsh" and "unprofessional".
>
> The inmate could not name witnesses from honor company or the officer escort.
>
> The RN's [sic] have both gone on record denying the allegations of unprofessional conduct both in writing and during my interview with them.

Dkt. No. 106-1 at 179-80; Dkt. No. 106-3 at 11.

During the course of Coryer's investigation, she was able to identify the nurses who treated McClain on the evening of May 16, 2014 as Dominic Pangallo ("Pangallo") and Dianne Gelormino ("Gelormino"). Dkt. No. 106-3 at ¶ 8. Coryer interviewed Pangallo and Gelormino on June 12, 2014. Id. at ¶ 9. On June 12, 2014, Gelormino prepared an Inter-Departmental Memorandum in response to McClain's allegations. Dkt. No. 106-3 at 17. Gelormino wrote:

> 5/16: I/M requested ESC c/o r testicular pain, stated it was hard & swollen; assessment was negative - same c/o dating back to 2011 multiple times. I/M was informed if symptoms persisted or worsened to return to medical. I/M was then returned to his cell. No further c/o was made by I/M until 5/19 when he requested an excused from work for groin pain. I/M was evaluated by MD 5/20 at which time he was sent to AMH E.R. Surgery was performed. 5/21: he was returned to the facility the same day. At no time did I threaten I/M or act in an unprofessional manner.

Dkt. No. 106-3 at 17.

In July 2014, McClain sent a letter to the Deputy Commissioner and Chief Medical Officer, the Superintendent, and Coryer reiterating his complaints regarding emergency sick call. Dkt. No. 77 at 31; Dkt. No. 106-3 at 24-25. McClain claimed he was, "led along without being told the names of these nurses" and asked for assistance identifying the nurses. Dkt.

6

No. 106-3 at 25.

On September 5, 2014, the Superintendent issued a decision denying McClain's grievance. Dkt. No. 106-3 at 21. The Superintendent noted, "[y]ou did not name any witnesses to be interviewed." *Id.* McClain appealed the decision to the Central Office Review Committee ("CORC") noting that, pursuant to DOCCS' directives, "inmates and employees are not to have any relationship, therefore [there] is no way I could know who worked by name[.]" *Id.* On December 30, 2014, CORC issued a decision accepting the grievance, in part. *Id.* at 9. In the decision, CORC referred to the nurses as "RN G" and "RN P". Dkt. No. 106-3 at 9. McClain was directed to "initiate a Freedom of Information Law Request (FOIL) for consideration to obtain the information he is requesting in accordance with facility procedures." *Id.*

### 3. Correspondence with DOCCS' Officials and FOIL Requests

On September 11, 2014, Coryer forwarded a memorandum to McClain in response to his "recent correspondence."[10] Dkt. No. 77 at 40. Coryer advised that her office did not "complete the grievance investigation" but addressed the medical portion and provided information to the IGRC and Superintendent. *Id*. Coryer directed McClain to "direct your inquires to these areas." *Id*.

In September 2014, McClain filed a FOIL request for his examination/medical records. Dkt. No. 77 at 43. McClain's request was denied and he was advised to request his records directly from the Nurse Administrator. *Id.*

On September 25, 2015, the FOIL Officer acknowledged McClain's "recent FOIL

---

[10]     The record does not contain any information related to the "recent correspondence" that Coryer references.

request"[11] for Coryer's records and advised that a response could "take[] up to twenty working days to complete[.]"  Dkt. No. 77 at 35.  On November 15, 2015, when McClain did not receive a response, he sent a letter to the FOIL Officer inquiring as to the status of his request.  *Id.* at 36.  Subsequently, McClain received a letter from the FOIL Officer indicating that he would need to "write directly to Medical."  *Id.* at 27.

On January 10, 2016, McClain wrote to Coryer asking for a copy of her investigation. Dkt. No. 77 at 20, 27.  However, Coryer forwarded McClain's correspondence to the FOIL office.  *Id.*

On February 5, 2016, McClain wrote to DOCCS' counsel claiming he was being "bounced around from both offices."   Dkt. No. 77 at 27.  On February 10, 2016, the Superintendent responded to McClain's correspondence advising that, "[d]ue to HIPAA law, medical records has [sic] their own FOIL Officer.  Medical FOIL requests are processed directly in medical."  *Id*. at 39.

On January 25, 2016, McClain filed another FOIL request.  Dkt. No. 77 at 37.  On February 23, 2016, McClain's FOIL request was denied.  *Id*. at 38.  The officer advised that "staff conduct grievance investigations are not allowed per policy."  *Id*.

### B.  Procedural History

On January 1, 2017, the Court received the Complaint in the within action.  Dkt. No. 1. Upon review of the Complaint, the Court found that McClain's Eighth Amendment medical indifference claims survived review.  Dkt. No. 7.  However, because the only named defendants were identified as "John Doe" and "Jane Doe," the Court directed the New York

---

[11]    The record does not clearly indicate when McClain filed this FOIL request.

State Attorney General's Office to attempt to ascertain the full names of defendants pursuant

to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam). *Id*. at 3-4.

On April 20, 2017, the Assistant Attorney General provided a response to the Court's

directive:

> We have requested and reviewed May 2014 medical records
> pertaining to the inmate Plaintiff. There are two entries dated
> May 16, 2014. The first entry appears to have been authored
> at 6 a.m. on that date. There is a second entry which appears
> to have been made later that date. We have inquired as to the
> identity of the medical providers who signed those entries. The
> first entry (made 6 a.m. on 5/16/14, according to what is
> written) was made, upon information and belief, by Jessica
> Dugan, RN. Upon information and belief, this individual was a
> DOCS employee who is no longer employed by DOCCS. The
> second entry for that date was, upon information and belief,
> authored by Dominic Pangallo, RN. Upon information and
> belief, this individual was a contract nurse who is no longer
> employed at a DOCCS facility.

Dkt. No. 12.

On May 10, 2017, in light of information provided by the Assistant Attorney General,

McClain moved to amend his Complaint. Dkt. No. 14. In a Decision and Order filed on May

23, 2017 (the "May 2017 Order"), the Court granted the motion, accepted the Amended

Complaint (Dkt. No. 16) as the operative pleading, and directed the Clerk of the Court to

substitute Pangallo in place of John Doe and Dugan in place of Jane Doe, as defendants.

Dkt. No. 15 at 3. The Court also directed the Clerk to send a copy of the May 2017 Order to

DOCCS General Counsel, with a copy of the Amended Complaint, and directed counsel to

provide addresses for defendants to effectuate service. *Id*. at 4.

On July 31, 2017, DOCCS General Counsel provided Dugan's address and advised the

Court that Pangallo died. Dkt. No. 22 at 1-2. On August 2, 2017, a summons was issued for

Dugan (Dkt. No. 24), and the Clerk was directed to terminate Pangallo as a defendant, without prejudice. Dkt. No. 25. McClain subsequently moved for permission to amend to add Pangallo's personal representative or successor as a party. Dkt. No. 36. In a Decision and Order filed on January 17, 2018, the Court granted the motion. Dkt. No. 39.

On May 10, 2018, Dugan filed an Answer to the Amended Complaint. Dkt. No. 65. On May 11, 2018, the Court issued a Mandatory Pretrial Discovery and Scheduling Order. Dkt. No. 66. Pursuant to the Order, the deadline to file amended pleadings was set for September 11, 2018. *Id.*

On December 12, 2018, McClain filed a motion which the Court construed as a notice of voluntary dismissal as to the Estate of Pangallo and a motion to add Nurse Gelormino as a defendant. Dkt. No. 97. In an Order filed on December 17, 2018, the Court directed the Clerk to terminate the Estate of Pangallo as a defendant in the action and denied the motion to amend. Dkt. No. 100.

On December 21, 2018, McClain was deposed. Dkt. No. 106-1. On February 28, 2019, Defendant filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to McClain's claims. Dkt. No. 106.

## II. DISCUSSION[12]

### A. Summary Judgment

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party

---

[12]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

is entitled to judgment as a matter of law.  The moving party bears the burden of

demonstrating the absence of disputed material facts by providing the court with portions of

pleadings, depositions, and affidavits which support the motion.  Fed. R. Civ. P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome

of the case as determined by substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

317, 248 (1986).

   All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party.  *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997).  Furthermore, where,

as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant

special solicitude.  *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.

2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is
> entitled to "special solicitude," . . . that a pro se litigant's submissions must
> be construed "liberally,". . . and that such submissions must be read to
> raise the strongest arguments that they "suggest," . . . .  At the same time,
> our cases have also indicated that we cannot read into pro se submissions
> claims that are not "consistent" with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not "suggest," . . . that we
> should not "excuse frivolous or vexatious filings by pro se litigants," . . . and
> that pro se status "does not exempt a party from compliance with relevant
> rules of procedural and substantive law.

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d

185, 191–92 (2d Cir. 2008).  Nonetheless, summary judgment is appropriate "[w]here the

record taken as a whole could not lead a rational trier of fact to find for the non-moving

party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

   Dugan moves for summary judgment arguing that she was not personally involved in the

alleged constitutional violations because she was not the female nurse who saw McClain on

11

the evening of May 16, 2014.  Dkt. No. 106 at 7-8.  In response, McClain, "agrees that Jessica Dugan should be removed from the complaint, as a defendant."  Dkt. No. 113-1 at 7. Based upon the admissible record, and McClain's concession, the Court finds that Dugan was not personally involved in the alleged wrongful conduct, and, therefore, she is entitled to summary judgment.

## B.  Cross Motion to Amend

Construing the cross motion liberally, McClain argues that he should be permitted to amend his pleading because Defendant improperly identified the female nurse who treated him at emergency sick call and continued to provide "incomplete discovery" in response to his requests for additional information.  Dkt. No. 113-1 at 10; Dkt. No. 118 at 3, 12-13. Dugan's counsel does not purport to represent Gelormino but, nevertheless, offers arguments in opposition to the cross motion.  Counsel claims that McClain has not established "good cause" because he was in possession of the information upon which the amendment is based as early as June 2018.  Dkt. No. 117 at 5-11.  Counsel also asserts that the proposed amendment is barred by the statute of limitations and futile.[13]  *Id.*

### 1.  Legal Standard

The filing of amended pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15.  Rule 15(a) states that leave to amend shall be freely given "when justice so requires."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993).  The Supreme Court has stated:

---

[13]    Because Dugan is no longer a party to this action, her standing to contest the motion "is, at best, dubious." *Copantitla v. Fiskardo Estiatorio,* Inc., No. 09 CIV. 1608, 2010 WL 1327921, at *4 (S.D.N.Y. Apr. 5, 2010) (citing *Vasquez v. Summit Women's Center, Inc*., No. 301 CV 955, 2001 WL 34150397, at *1 n. 1 (D.Conn. Nov. 16, 2001) ).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should . . . be "freely given."

*Foman*, 371 U.S. at 182.

"Although Rule 15(a) governs the amendment of pleadings, Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 243 (2d Cir. 2007). The Second Circuit has held that, where a district court has set a deadline for amending pleadings, "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline[.]" *Parker v. Columbia Pictures Indus*., 204 F.3d 339, 340 (2d Cir. 2000). A plaintiff may establish "good cause" if the proposed amendment "rests on information that was not available prior to the deadline to amend the pleadings." *Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*, No. 09–CV–4622, 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010); *see also Terry v. Cty. of Cayuga*, No. 5:11-CV-1296 (LEK/ATB), 2014 WL 1871879, at *2 (N.D.N.Y. May 8, 2014) ("There is good cause for permitting modification of pleading-amendment deadlines where the party moving for modification has been diligent in doing so.") (citing *Grochowski v. Phoenix Constr*., 318 F.3d 80, 87 (2d Cir. 2003) ).

If the moving party is able to establish good cause, only then should the Court "consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend." *See Parker*, 204 F.3d at 340. "The decision to grant leave in such circumstances is left to the sound

13

discretion of the district court." *Dos Santos v. Terrace Place Realty, Inc*., 433 F.Supp.2d 326, 336 (S.D.N.Y. 2006).

## 2. Analysis[14]

### i. Good Cause

In December 2018, this Court issued a Text Order denying McClain's first motion to amend to include Gelormino as a defendant concluding that, "Plaintiff has not established good cause for such an amendment and the request is untimely."  Dkt. No. 100.  At that time this Court did not have the benefit of a fully developed record.  Now, with the second motion to amend, this Court is presented with a complete admissible record that includes new factual information related to McClain's efforts to obtain information related to Nurse Gelormino.  To properly analyze whether good cause exists to permit the amendment and excuse McClain's failure to comply with the deadlines in the scheduling order, the Court examines the entire procedural history of the case and McClain's actions both before he filed his original Complaint and during the course of this litigation.

In June 2014, Coryer interviewed McClain in connection with his grievance.  From July 2014 until February 2016, McClain mailed several letters to Coryer and other DOCCS' officials requesting a copy of Coryer's investigative records and other information that would reveal the identity of the nurses who treated him at emergency sick call.  *See generally*, Dkt. No. 77.  Simultaneously, McClain filed at least three FOIL requests for that information.  *See*

---

[14]      As an initial matter, the Court notes that the cross motion fails to comply with the Northern District of New York's Local Rule 7.1. Under Local Rule 7.1, a proposed amended pleading "must be a complete pleading, which will supersede the original pleading in all respects.  A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." N.D.N.Y. L.R. 7.1(a)(4).  Here, McClain has not provided a proposed pleading.  Accordingly, the motion to amend may be denied on this basis alone. In view of McClain's pro se status however, the Court has otherwise considered the motion.

*id*. For reasons that are not entirely clear, McClain's requests were diverted and denied. Because he was unable to obtain information or documentation allowing him to identity the medical providers who treated him during the evening hours of May 16, 2014, McClain was compelled to initiate his federal action against Doe defendants.

In the caption of the original Complaint, McClain identified the Doe defendants as medical staff working the "3 PM - 11 PM Shift." *See* Compl. at 1. McClain also alleged that the incidents that formed the basis for his Eighth Amendment claim occurred, "[o]n the evening of May 16, 2014, at Auburn Correctional Facility," "around, or about 10:00 PM," and involved a "female nurse" identified as Jane Doe and a "male nurse" identified as John Doe. *See id.* Nowhere in the Complaint did McClain allege a cause of action for deliberate medical indifference arising from his medical treatment at sick call at 6:00 a.m. on May 16, 2014 or on May 19, 2014. *See generally*, Compl. Rather, the allegations centered around his treatment at <u>emergency</u> sick call on May 16, 2014.

After a review of the Complaint, the Court issued a *Valentin* Order directing the Attorney General's Office to attempt to ascertain the full names of the defendants. Dkt. No. 7 at 3-4. Inexplicably, the Assistant Attorney General responded with a letter identifying Jessica Dugan as the nurse who treated McClain at 6 a.m. on May 16, 2014.[15] Dkt. No. 12. Counsel did not acknowledge the fact that the Eighth Amendment claims were asserted against the female nurse who treated McClain during emergency sick call in the evening of May 16, 2014. Moreover, Counsel's response was based only upon a review of "May 2014 medical records." *Id.*

---

[15]     Counsel's complete response was summarized in Part I(B), *supra.*

15

Relying upon counsel's information, McClain amended his complaint and named Dugan as a defendant.  McClain continued his efforts to obtain a copy of the records related to the investigation into his grievance and filed a motion for discovery seeking DOCCS' records, including log books and interdepartmental communication "reflecting the investigation of plaintiff[']s emergency and complaint[.]" Dkt. No. 44 at 1-2.  Because Dugan had not yet filed an Answer to the Amended Complaint, the Court denied the motion as premature.  Dkt. No. 45.

In June 2018, after Dugan filed an Answer, McClain served another discovery demand for a copy of Coryer's investigative records and the log book entries for medical staff.  Dkt. No. 77.  On June 26, 2018, Defendant's counsel mailed the Rule 26 disclosures to McClain.[16] Dkt. No. 90; Dkt. No. 117 at 6.  The documents provided included McClain's medical records and records related to his grievance.  Dkt. No. 90.  The parties agree that this was the first time McClain was provided with copies of records related to his grievance.  Dkt. No. 97 at 5; Dkt. No. 98 at 1.  In the context of this analysis, it is important to note that the statute of limitations on McClain's § 1983 Eighth Amendment claims expired in May 2017.

In September 2018, McClain filed a motion to compel seeking responses to his FOIL requests, video surveillance, and a log book for the officers inside the north wall tower.  Dkt. No. 87.  During a conference on October 15, 2018, Defendant's counsel advised the Court that all relevant grievance records, medical records, and the log book for the officers who escorted McClain to medical, were produced.  As to any further requests, the Court was advised that no responsive documents exist.  The Court denied McClain's motion without

---

[16]    The record does not contain any evidence suggesting when McClain received Defendant's disclosures.

prejudice, "to [Plaintiff's] right to submit a supplemental document demand."  Dkt. No. 92. The Court also extended the discovery deadline until December 31, 2018.  Dkt. No. 93.

On November 13, 2018, McClain submitted a supplemental request demanding production of, *inter alia*, (i) the "[l]og book entry of May 16, 2014, movement of Medical Emergency, in Medical Department/Unit;" (ii) [d]ocumentation logged of all medical staff present, and responding to, plaintiff's medical emergency on May 16th, 2014;" (iii) [d]ocumentation logged of all medical staff working on May 16th, 2014, during plaintiff's medical emergency;" and (iv) "Auburn Corr. Facility investigation conducted by Nurse Administrator upon, RN, Dianne Gelormino."  Dkt. No. 94 at 3-4.  It is not clear from the record whether Defendant responded to these demands.

On December 12, 2018, three months after the deadline to amend the pleadings, but prior to the close of discovery, McClain filed a motion to amend the Amended Complaint to include RN Dianne Gelormino as a defendant in the action.  *See generally*, Dkt. No. 97. McClain claimed, "[o]nly through thoroughly, inspecting the discovery sent to plaintiff by Assistant Attorney General, Barbara D. Underwood, on June 26, 2018, did the plaintiff find the sworn statements of investigation stored by Nurse Administrator and what may, and may not be, the true identity of the female nurse working the evening of the plaintiff's medical emergency."  *Id*. at 5.

Defendant opposed the motion arguing that it was untimely based upon the September 11, 2018 deadline:

> The papers Plaintiff appears to rely upon to justify his addition of RN Diane Gelormino as a Defendant were annexed to Defendant's initial disclosures, indicated by the bates-stamps in the bottom right corner. (Dkt. 97). Defendant's initial disclosures were served on June 26, 2018. (*See*, Dkt. 90-2).

As such, he had the documents necessary to file his proposed motion to amend well in advance of the 9/11/18 deadline to amend pleadings.

Dkt. No. 98.

On December 17, 2018, the Court denied the motion to amend in a Text Order that reads, in pertinent part, "Plaintiff has not established good cause." Dkt. No. 100.

Four days later, McClain appeared for his deposition. Dkt. No. 106-1. McClain repeatedly testified that he had no personal knowledge of Dugan's involvement and reiterated that all of his claims pertained to treatment he received during emergency sick call. Dkt. No. 106-1 at 145, 153, 159, 177, 181, 184, 187-190. McClain testified that he only named Dugan as a defendant because Defendant provided her name during discovery. *Id*. at 138, 145.

At the conclusion of the deposition, McClain and counsel engaged in a colloquy regarding the disclosure of log books for the medical unit, which McClain claimed were not provided:

> A. That's for the request of the - - we had this conversation over the phone during a conference, the request of all medical staff who worked that evening, who signed into the log books.
> Q. I think - - did we give you the log books?
> A. No, you gave me the log book of C block. The log book of the actual medical unit itself looked the same.
> Q. We'll discuss this when we g[et] off the record.

Dkt. No. 106-1 at 209. There is no evidence in the record of any subsequent discussion or discovery in response to these demands.

On February 10, 2019, McClain sent a letter to the IGRC at Auburn C.F. requesting a plethora of documents including, "[c]opy of Medical Unit Nurses names assigned to work the

18

evening of May 16, 2014, at Auburn Correctional Facility during medical emergency of inmate Arron [sic] McClain, #12-B-0683."  Dkt. No. 113-2 at 13.  McClain also asked for copies of the notes and reports generated by those nurses.  *Id.* at 14.  McClain forwarded a copy of the letter to "DOCCS-General Counsel."  *Id.* at 17.  It is unclear whether McClain received a response to this correspondence.  Instead, shortly thereafter, Dugan filed a motion for summary judgment arguing, in essence, that McClain sued the wrong nurse.

Given the aforementioned summary and prolonged procedural history related to the issue at hand, the Court concludes that McClain has diligently attempted to obtain the information that is the subject of the proposed amendment.  This Court also finds that, despite the late stage of this litigation, the unique factual scenario set forth above presents "good cause" to allow McClain to amend his pleading and add a new defendant.

At the outset of this litigation, McClain received erroneous information from the Attorney General's Office that resulted in McClain naming Dugan as a defendant herein.  At no time prior to the filing of this motion for summary judgment did Defendant advise the Court or McClain that the April 2017 information was incorrect and that, in fact, the wrong defendant had been sued.  While the Court does not suggest that the Attorney General's Office intentionally misidentified the Jane Doe defendant, what is troubling is Defendant's failure to comply with the Federal Rules of Civil Procedure and provide McClain with the correct information once it became evident that Dugan was not involved.

Rule 26(e) provides, in pertinent part:

> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

The proper identity of the female nurse who treated McClain at emergency sick call was not a difficult fact to unearth.  Indeed, Coryer and DOCCS identified Gelormino within a month of the incident.  Dkt. No. 106-3 at ¶ 8.  Without imputing Coryer's or DOCCS' knowledge to Defendant or her counsel, the Court must assume that, at the very latest, Defendant's counsel was on notice of Gelormino's potential involvement in the alleged constitutional violations in June 2018; when the grievance records were disclosed to McClain.  However, even after the records were disclosed, counsel did not provide a Rule 26(e) response and did not inform the Court or McClain that the April 2017 correspondence contained incorrect information.

Six months later, counsel deposed McClain and repeatedly posed questions about McClain's independent knowledge related to Dugan's personal involvement.  In response, McClain testified that he had no personal knowledge of Dugan's involvement and stated that all of his claims pertained to treatment he received during the evening.  Dkt. No. 106-1 at 145, 153, 159, 177, 181, 184, 187-190.  Despite this testimony, counsel did not supplement or correct the discovery response or request a voluntary stipulation of discontinuance.  Rather, counsel continued to defend the litigation with the knowledge that McClain did not sue the proper defendant.  Then, in February 2019, after the statute of limitations expired and the discovery deadline lapsed, Defendant moved for summary judgment and, for the first time, in the Memorandum of Law counsel stated, "[a]s noted, he was seen by Former Defendant Pangallo (the male nurse) and a female Nurse, who NA Mary Coryer's later

20

investigation in response to a grievance determined to be RN Diane Gelormino."  Dkt. No. 106-5 at 11.

In opposition to the motion to amend, Defendant argues that it is based "upon papers [McClain] received as part of Defendant's initial disclosures" and, "as such [McClain] had the documents necessary to file his proposed motion to amend well in advance of the 9/11/18 deadline[.]" Dkt. No. 117 at 5.  The fact that McClain received a copy of the grievance records does not absolve Defendant of her obligation, pursuant to the Rule 26(e), to supplement discovery responses and inform McClain that Dugan was misidentified as the defendant in this action.  *See Carrillo v. Gillespie*, No. 2:12-CV-02165, 2014 WL 1307454, at *3 (D. Nev. Mar. 28, 2014) (finding that the defendant has the continuing obligation under Rule 26(e) to supplement his discovery and disclose information that could determine the correct defendant); *see also Diaz v. City of New York*, No. 13 CIV. 8281, 2015 WL 6125586, at *1-4 (S.D.N.Y. Oct. 7, 2015) (the defendant, after a motion to dismiss had been filed, in connection with his continuing duty of disclosure under Rule 26(e) of the Federal Rules of Civil Procedure, identified a possible defendant in the action).  Moreover, the Court must recognize that McClain is a pro se litigant and, as such is afforded special solicitude.  In this regard, the Court has thoroughly reviewed Defendant's June 2018 disclosure response (Dkt. No. 90) and finds that Gelormino is not referenced anywhere in the grievance records as the nurse who treated McClain at emergency sick call.  In CORC's response, she is referred to only as "RN G."  Dkt. No. 106-3 at 9.  Moreover, while she prepared a memorandum in June 2014, nowhere in her memorandum does she assert that she was the female nurse that treated McClain at emergency sick call.  Dkt. No. 106-3 at 17.  In fact, Gelormino's memorandum reads more like a summary of McClain's medical treatment than a personal

account of her actions. Indeed, Gelormino's personal involvement in the alleged constitutional violations was not disclosed until Coryer's Declaration, dated February 2019, was filed in connection with Defendant's summary judgment. Dkt. No. 106-3.

Based upon the Court's independent and thorough review of the entire admissible record and procedural history, the Court finds that McClain, a pro se inmate who is incarcerated, continuously and diligently pursued information that would lead to the proper identification of the female nurse who treated him at emergency sick call in the evening hours of May 16, 2014. McClain's pursuit of the information, coupled with Defendant's failure to advise McClain that Dugan had been mistakenly identified, leads this Court to find "good cause" to permit McClain to amend his Amended Complaint after the deadline set forth in the scheduling order. The Court is constrained to rule in this manner because, to conclude otherwise would, in essence, be a windfall for an interested party that provided false information, failed to adhere to the continued obligation during the course of the litigation to correct or supplement discovery, and permit the alleged culpable party to escape liability due to the expiration of the statute of limitations. Accordingly, McClain's cross motion is granted. *See Brooks v. Felker*, No. 2:08-CV-2512, 2011 WL 4898189, at *5 (E.D. Cal. Oct. 13, 2011) (allowing the plaintiff to amend his complaint because "[h]ad [the] defendants timely provided the identity of the pertinent facility captains during discovery, [the] plaintiff may have included them in the previous amended complaint"); *see also Carrillo*, 2014 WL 1307454, at *4 (the plaintiff "should have an opportunity to test his claim on the merits if he can identity the proper defendant to replace [the current defendant]").

### ii. Undue Prejudice

Having found "good cause," the Court also considers whether the proposed amendment

22

will have a prejudicial impact upon the parties. This case involves one cause of action related to Gelormino's participation in McClain's medical treatment on one specific date. The proposed amendment does not include any new factual allegations, but arises under the same nucleus of operative facts set forth in the Amended Complaint. *See Maddox v. Fowler*, No. 5:14-CV-01068 (MAD), 2015 WL 4366222, at *6 (N.D.N.Y. July 16, 2015). The facts related to McClain's medical care on May 16, 2014 have been investigated and no further discovery is necessary. Moreover, the Court assumes that the Attorney General will represent Gelormino. Accordingly, the Court is not presented with any facts suggesting that the proposed defendant would suffer undue prejudice. *See Toliver v. Office-Dep't of Corr. NYC*, No. 10 CIV. 5354, 2013 WL 3783727, at *7 (S.D.N.Y. July 9, 2013) ("[T]his is not a case where a plaintiff seeks to add a defendant whose presence would introduce an entirely new theory of liability or an unrelated claim."). Conversely, a denial of the motion would result in extraordinary prejudice to McClain because he may be unable to file a new complaint against Gelormino due to statute of limitations issues.

### iii. "Relation Back"

In Section 1983 actions, the applicable statute of limitations is the State's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted). In New York, a three year statute of limitations applies for personal injury actions and thus to Section 1983 actions. *Id*.; *see also* N.Y. C.P.L.R. § 214(5). "When the statute of limitations would otherwise bar an amendment, Rule 15(c) [of the Federal Rules of Civil Procedure] allows the claim if it 'relates back' to the original complaint." *Laureano v. Goord*, No. 06-CV-

7845, 2007 WL 2826649, at *5 (S.D.N.Y. Aug. 31, 2007) (citing Fed. R. Civ. P. 15(c)(3)).

Pursuant to Rule 15(c), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (c) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

"[T]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the proper defendant], but whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error." *Tolbert v. Koenigsmann,* No. 9:13-CV-1577 (LEK/DEP), 2016 WL 223713, at *2 (N.D.N.Y. Jan. 19, 2016) (citations omitted).

As discussed *supra*, Gelormino was on notice, in June 2014, that McClain filed a complaint related to his medical treatment. Moreover, defense counsel was aware that the Eighth Amendment claim could have been brought against Gelormino. *See Tolbert*, 2016 WL 223713, at *3 (finding that the identity of the physical therapist who treated the plaintiff

was available to defense counsel representing the other defendants and may be imputed to the new defendant). The record establishes that McClain identified Dugan as the Jane Doe defendant based solely upon the representations of counsel in April 2017 and was met with resistance as he attempted to clarify issues surrounding the identification. Clearly, this is the type of "mistake" which allows McClain to amend his complaint despite the expiration of the statute of limitations. *See Benitez v. Locastro*, No. 9:04-CV-423, 2010 WL 419999, at *6 (N.D.N.Y. Jan. 29, 2010) ("[S]everal courts in this Circuit, including this one, have held that [Federal Rule of Civil Procedure 15] may not be applicable in all circumstances, particularly when a defendant has prevented the plaintiff from discovering the identity of the John Doe defendants and the plaintiff has taken reasonable affirmative steps to discover their identities.") (citing, *inter alia, Byrd v. Abate*, 964 F.Supp. 140, 146 (S.D.N.Y. 1997) (stating that "[t]o hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended").

Therefore, under Rule 15(c), McClain's proposed amendment relates back to the date of the original Complaint. *Tolbert*, 2016 WL 223713, at *3 (granting motion because the proposed amendment substituted the name "Towler" for the name "Pena" and only changed the party against whom the plaintiff's Eighth Amendment claim is asserted).

### iv. Futility

Leave to amend under Rule 15 may be denied where such amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state

25

a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc.*

*v. Ikanos Commc'ns, Inc*., 681 F.3d 114, 119 (2d Cir. 2012).

In his cross motion, McClain refers to Eighth Amendment claims and constitutional

claims related to violations of DOCCS' directives.

### a.  Eighth Amendment claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the

hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*,

429 U.S. 97, 104 (1976).  To state an Eighth Amendment claim for medical indifference, a

plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.

*See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The objective component of an Eighth

Amendment deliberate indifference medical claim requires that the alleged deprivation must

be sufficiently serious, in the sense that a condition of urgency, one that may produce death,

degeneration, or extreme pain exists."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)

(quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks

omitted).  Under the subjective element, medical mistreatment rises to the level of deliberate

indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . .

that evinces 'a conscious disregard of a substantial risk of serious harm.' "  *Chance v.*

*Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).

"Deliberate indifference requires more than negligence but less than conduct undertaken

for the very purpose of causing harm."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical

care provider was aware of facts from which the inference could be drawn that the inmate

had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

"When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't of Health Servs*., 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

In the March 2017 Order, the Court found that McClain's Eighth Amendment medical indifference claims survived review and required a response. For the reasons set forth in the March 2017 Order, the claims against Gelormino also survive review and require a response.

In the Reply Memorandum of Law, Dugan's counsel argues that "even if [McClain] had sued the correct defendant, [his] opposition papers regarding his medical indifference claim

fail to create an issue of fact sufficient to preclude summary judgment." Dkt. No. 117 at 7.

Even if the Court considers this argument, the record contains genuine issues of material fact

requiring a trial before a jury.

With respect to the subjective analysis[17], McClain testified that the female nurse

"forcefully dug her fingers into the infected area, forcing the plaintiff to convulse in pain and

almost fall[] off the table[.]" Dkt. No. 106-1 at 153-54.  McClain grabbed the nurse's arm in

an attempt to stop her, causing the officers to "rush" to him and explain that he could not

touch the nurse.  *Id*. at 154.  McClain testified that the female nurse told him there was

nothing wrong with him and told him to return to his cell.  *Id.* at 155.  The female nurse

refused to provide ambulatory assistance and "made him walk" back to his cell.  *Id*.  at 155-

56.   Defendant cites to the Ambulatory Note, prepared by Pangallo (but not in admissible

form) and argues that McClain received "appropriate medical care" and further, that his

disagreement with his treatment is not grounds for an Eighth Amendment claim.  Dkt. No.

106-5 at 11-12.  The record before the Court does not contain sworn statements from

Gelormino or Pangallo.  For purposes of a motion for summary judgment, the governing law

that the evidence must be viewed in the light most favorable to the non-moving party,

requires the Court to credit McClain's account of the events.  *See In re Dana Corp*., 574 F.3d

128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must

draw all reasonable inferences in favor of the non-moving party and may not make credibility

determinations or weigh the evidence, functions which are reserved to a jury and not a judge)

(citing cases).  If McClain's testimony is credited, a reasonable factfinder could find that

---

[17]     Defendant concedes, for the purposes of the motion, that McClain suffered from a serious
medical condition sufficient to satisfy the objective prong of the Eighth Amendment analysis.  Dkt. No. 106-5 at 9.

Gelormino acted with deliberate indifference.  Accordingly, this portion of McClain's motion to amend is granted.

### b.  Violation of DOCCS' Directive

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim).  "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . ."); *Fluent v. Salamanca Indian Lease Auth*., 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).  Failure to follow a DOCCS' Directive does not give rise to a § 1983 claim.  Accordingly, to the extent that McClain moves to amend to assert a cause of action against Gelormino based upon the failure to follow DOCCS' directives, that portion of the motion is denied.  *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).

### III.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that Dugan's motion for summary judgment (Dkt. No. 106) be

**GRANTED**; and it is further

ORDERED that Plaintiff's cross motion for permission to amend his Amended Complaint to include Gelormino as a defendant is **GRANTED in part and DENIED in part** consistent with this Order; and it is further

ORDERED that Plaintiff is directed to submit a proposed Second Amended Complaint to this Court bearing his original signature within thirty (30) days of the filing date of this Order and Report-Recommendation.  In an effort to assist Plaintiff in drafting the proposed Second Amended Complaint, the Clerk shall forward to Plaintiff a copy of his Amended Complaint (Dkt. No. 16).  Plaintiff may identify Gelormino as a defendant by handwriting her name in the appropriate locations throughout on the copy of the Amended Complaint and indicate in the caption of the document that it is a Second Amended Complaint.  Once Plaintiff has made these changes to the copy of the Amended Complaint, captioned it as his Second Amended Complaint, and signed the proposed Second Amended Complaint, he should submit it to the Court for review; and it is further

ORDERED that upon the filing of the signed Second Amended Complaint or at the expiration of the time set to comply, whichever is earlier, the Clerk shall return this file to the Court for further review; and it is further

ORDERED that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[18] days within which to

---

[18]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday,

file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


DATED:   October 28, 2019



Miroslav Lovric
U.S. Magistrate Judge

_____

Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(c).