UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ARRON MCCLAIN, also known as
Aaron McClain,

     Plaintiff,

  -against-          9:17-CV-0046 (LEK/ML)

DIANNE GELORMINO,

     Defendant.

---

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

  Pro se Plaintiff Arron McClain, who at all relevant times was in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983 on January 17, 2017. See Dkt. No. 1 ("Complaint"). The Complaint has gone through several iterations, and in its current form alleges violations of Plaintiff's Eighth Amendment rights by Defendant Dianne Gelormino arising from circumstances surrounding an emergency sick call visit Plaintiff made to the Auburn Correctional Facility ("Auburn C.F.") medical department on May 16, 2014. See Dkt. 122 ("Second Amended Complaint"). Now before the court is Defendant's motion to set aside default judgment and dismiss the second amended complaint, Dkt. No. 151 ("Motion to Dismiss"), 151-2 ("Gelormino Affidavit"), 151-3 ("Defendant's Memorandum"), as well as Plaintiff's motions for default judgment, Dkt. Nos. 150, 156. Both parties have responded to the other's respective motions. See Dkt. Nos. 155 ("Plaintiff's Response to Motion to Dismiss"), 158 ("Defendant's Affidavit Opposing Motion for Default"). Additionally, on August 19, 2021, the Court requested additional briefing from the parties regarding Federal Rule of Civil Procedure ("F.R.C.P.")

15(c)(1)(A). Dkt. No. 160. Defendant provided her supplemental briefing, Dkt. No. 161

("Defendant's Supplemental Memorandum"), and Plaintiff responded, Dkt. No. 165 ("Plaintiff's

Supplemental Response"). For the reasons that follow, Defendant's Motion to Dismiss is granted

in part and denied in part and Plaintiff's motions for default judgment are denied as moot.

## II.    BACKGROUND

### A.  Factual History

For the purposes of Defendant's Motion to Dismiss, the following factual allegations

contained in Plaintiff's Second Amended Complaint are accepted as true.

On the evening of May 16, 2014, Plaintiff was carried on a stretcher to the medical

department at Auburn C.F. complaining of excruciating pain and discomfort in his abdominal

area. Second Am. Comp. at 2. Plaintiff was inspected by two nurses, Dominic Pangallo and

Defendant Dianne Gelormino. Id. Defendant accused Plaintiff of abusing the emergency sick-

call procedure because he had visited medical for this same pain multiple times before and was

scheduled to see a medical provider. Id.

Pangallo carefully examined Plaintiff's abdomen and informed Defendant of the location

of Plaintiff's pain. Id. at 3. Defendant then dug her fingers into the area Pangallo had indicated

area. Id. Plaintiff convulsed in pain and had to grab Defendant's hands to stop from falling off

the examination table. Id.

Plaintiff was perfunctorily informed that nothing was wrong with him and sent back to

his cell without assistance. Id. Thereafter, Plaintiff did not receive any care for four days during

which he was unable to eat or drink. Id. On May 20, 2014, Plaintiff's regular medical provider

examined him. Id. The medical provider inspected Plaintiff's abdomen "in a similar fashion as

RN, Dianne Gelormino only with consideration for the Plaintiff's pain and discomfort." Id.

The medical provider immediately sent Plaintiff to Auburn Community Hospital where he underwent emergency surgery to remove his appendix before it ruptured. Id.

**B.  Procedural History**

Plaintiff filed his initial Complaint on January 17, 2021. See Compl. Upon sua sponte review of the Complaint pursuant to 28 U.S.C. § 1915, the Court allowed Plaintiff's Eighth Amendment claims to continue, but noted that Plaintiff was unable to identify the two nurses who had seen him on the day in question, and he had since been transferred from Auburn C.F. where the claims arose. See Dkt. No 7 at 3. The Court directed the New York State Attorney General's Office to ascertain the identities of the defendants described in the Complaint pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997). Id. at 3–4.

On April 20, 2017 the Attorney General's Office responded to the Court's request stating they had reviewed Plaintiff's medical records from May 2014 and had found the names of two nurses who had made entries for Plaintiff that day: Dominic Pangallo and Jessica Dugan. See Dkt. No. 12. The Attorney General's Office's response also noted that neither nurse still worked for the Department of Corrections and Community Supervision ("DOCCS"). Id.

In light of this information, Plaintiff amended his Complaint on May 23, 2017 replacing the John and Jane Doe designations with the named defendants Dominic Pangallo and Jessica Dugan. See Dkt. No. 16. Pangallo was subsequently terminated as a defendant after Plaintiff and the Court were advised he had died. See Dkt. No. 100.

Upon reviewing discovery sent on June 26, 2018 from the New York State Attorney General's Office, which was representing Dugan, Plaintiff discovered that Dugan was not the female nurse who Plaintiff encountered on the night of May 16, 2014. See Dkt. No. 97 at 5. According to the received discovery, Defendant Gelormino was the female nurse who had examined Plaintiff. Id. On December 12, 2018, Plaintiff moved to again amend his Complaint to

3

add Gelormino as a defendant, <u>see</u> Dkt. No. 97, however, his motion was denied as untimely, <u>see</u> Dkt. No. 100.

On February 28, 2019, Dugan moved for summary judgment. <u>See</u> Dkt. No. 106. Plaintiff responded to Dugan's motion for summary judgment by filing a cross motion again seeking to amend his Complaint to add Gelormino as a defendant. <u>See</u> Dkt. No. 113. On November 26, 2019, Dugan was granted summary judgment and dismissed from the case and Plaintiff's motion to amend was granted. <u>See</u> Dkt. No. 121.

On January 22, 2020, Plaintiff's Second Amended Complaint was accepted by the Court and Gelormino was added as a defendant in this matter. Dkt. No. 124. Plaintiff's claims for violation of his Eighth Amendment rights as asserted against Defendant Gelormino by way of Section 1983 were allowed to continue. <u>Id.</u>

Thus began a lengthy saga in which multiple summonses were issued and reissued while the Court, the Attorney General's Office, and the U.S. Marshals attempted to aid Plaintiff in locating and serving Defendant. <u>See</u> Dkt. Nos. 125, 128–132, 135–136, 138, 140–41. Given the difficulties in locating Defendant, on June 16, 2020, Plaintiff was granted an extension of time to effectuate service upon her. <u>See</u> Dkt. No. 135. Finally, on August 31, 2020, Defendant was served and was directed to respond to the Second Amended Complaint by October 30, 2020. Dkt. No. 142.

On December 7, 2020, after Defendant had failed to appear or otherwise respond, Plaintiff requested entry of default, Dkt. No 146, and default was entered by the Clerk on December 30, 2020, Dkt. No. 147. Plaintiff subsequently moved for default judgment. <u>See</u> Dkt. No. 150.

However, Defendant has now appeared, contesting the entry of default judgment and seeking to dismiss the Second Amended Complaint. Presently before the Court are Plaintiff's motions for default judgment, Dkt. Nos. 150, 156, and Defendant's motion to set aside default judgment and dismiss the Second Amended Complaint, Dkt. No. 151.

## III.   DISCUSSION

### A.  Default Judgment

Defendant argues there is good cause to set aside the default entered against her on December 30, 2020 under Rule 55(c) of the Federal Rules of Civil procedure ("F.R.C.P."). The Court agrees.

Under Rule 55(c) a court may set aside an entry of default for good cause. Vacating an entry of default "under Rule 55(c) [is] left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993) (citations omitted). Nevertheless, a court should consider three factors when deciding if good cause exists to set aside an entry of default: "(1) whether the default was willful; (2) whether the moving party has presented a meritorious defense; and (3) whether setting aside the default would prejudice the party for whom default was awarded." Travelers Indem. Co. v. Kabir, 368 F. App'x 209, 210 (2d Cir. 2010) (citing Enron, 10 F.3d at 96). Additionally, "good cause . . . should be construed generously" with doubts as to whether a default should be vacated resolved in favor of the defaulting party. Enron, 10 F.3d at 96.

Regarding the first prong, willfulness requires "more than mere negligence on the part of the defendant in defaulting." Swarna v. Al-wadi, 622 F.3d 123, 142 (2d Cir. 2010).

The Court finds that Defendant was not willful in her failure to respond to Plaintiff's Second Amended Complaint. Defendant was served with court documents in September of 2020

but asserts she did not properly respond because she is unfamiliar with legal processes and mistakenly believed she did not need to respond until she received further information as to what exactly was required of her. See Dkt. No 151-2 ("Gelormino Affidavit") at 2. Further, Defendant has been confined to a wheelchair by a debilitating and painful disease, chronic inflammatory demyelinating polyneuropathy, Gelormino Aff. at 2, which could reasonably interfere with an individual's efforts to seek counsel and properly respond to a complaint filed against them. The Court finds that these circumstances adequately show Defendant's failure to respond was merely negligent, and not willful.

When determining whether setting aside default would prejudice a plaintiff, a court "must consider the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy . . . result[ing] in the loss of evidence, creat[ing] increased difficulties of discovery, or provid[ing] greater opportunity for fraud and collusion." Swarna, 622 F.3d at 142 (quotation marks omitted). The Court finds that Plaintiff will not be prejudiced by setting aside the default. The delay in Defendant's response to the Second Amended Complaint from October 30, 2020, when her response was due, to January 29, 2021 when Defendant actually filed a response, will not thwart Plaintiff's recovery, result in loss of evidence or increase the difficulties of discovery. Indeed, this three-month delay is minimal considering over seven years have passed since the incident at issue occurred. See Second Am. Comp. at 2.

Given that Defendant did not default willfully and Plaintiff will not be prejudiced by setting aside the entry of default, the Court does not need to assess whether Defendant's defense is meritorious and the Court hereby sets aside the default judgment entered against Defendant. See Swarna, 622 F.3d at 143 ("[h]aving found that the entry of default judgment failed on both the wilfulness and prejudice prongs . . . we need not address the 'meritorious defense' prong").

Because the Clerk's entry of default is set aside, Plaintiff's motions for default judgment are denied as moot. See F.R.C.P. 55(c)(a) (requiring entry of default by Clerk to proceed with default judgment).

### B.  Plaintiff's Second Amended Complaint and Summons were Served Properly

Defendant argues that the Second Amended Complaint should be dismissed because service was procedurally deficient. Def.'s Mem. at 4. Defendant claims she was never served with a summons in violation of Rule 4(c)(1) and service was untimely under Rule 4(m). Id.

### 1.    Service Did Not Violate F.R.C.P. 4(c)(1)

F.R.C.P.4(c)(1) requires that "[a] summons must be served with a copy of the complaint."

Accordingly, in the acknowledgement of receipt filed with the Court on Sept 8, 2020 and signed by Defendant, she declared under penalty of perjury, "that [Defendant] received a copy of the summons and of the complaint in the above captioned manner." Dkt. No 142. However, Defendant now claims the documents she received did not contain a summons. See Def.'s Mem. at 4. To support this claim, Defendant argues in her memoranda that the documents she sent to her insurance company in January 2021 did not contain a summons and asserts that she is unable to locate any language on the documents she received that indicates she was required to file a response. Id.

First, Defendant makes a factual claim regarding the contents of the documents she sent to her insurance company, however Defendant does not point to any factual evidence on the record to support this factual claim. For instance, there is no indication in Defendant's Affidavit of what documents were or were not contained in the bundle she sent to her insurance company. See generally Gelormino Aff. Thus, there is no factual support on the record for Defendant's argument.

Further, an acknowledgment of service—validly signed and returned under New York State law as Defendant's was—has either been treated as "presumptive proof" that a party was served with the documents specified in the acknowledgement, see Chue v. Clark, 999 N.Y.S.2d 676, 679 n.1 (Sup. Ct. 2014) (an acknowledgement of service would presumably "be proof that the [defendant] was served with, or admitted receipt, of [the referenced] documents . . . ."), or a waiver of a defendant's right to contest service of process, see Velez v. Vassallo, 203 F. Supp. 2d 312, 324 (S.D.N.Y. 2002).

Even if Defendant's acknowledgement of service merely creates a presumption of valid service, rather than a waiver of the right to contest service, Defendant has not overcome that presumption. Defendant's assertions in her present affidavit—that the documents currently in her possession do not indicate she must respond—do not necessarily mean the documents she received months ago did not indicate as much. A page may have been misplaced or discarded between their delivery and the present. To the extent Defendant's statement is interpreted to indicate she currently has all documents received and none constitute a summons, this is directly contradicted by her previous statement signed under penalty of perjury. See Dkt. No. 142. Similarly, Defendant's unsupported argument that she did not send a summons to her insurance company suffers from the same deficiencies, and neither argument is sufficient to overcome the presumption of valid service created by Defendant's signing of the acknowledgement of service. See Chue, 999 N.Y.S.2d at 679 n.1.

## 2. *Service Did Not Violate F.R.C.P. 4(m)*

Rule 4(m) requires service of a defendant within 90 days after a complaint is filed. It also provides that, if a plaintiff is unable to effectuate service within that time, but can show good cause for the failure, "the court must extend the time for service for an appropriate period." F.R.C.P. 4(m).

Defendant argues that service was untimely under this Rule because Plaintiff filed the Second Amended Complaint on December 3, 2019, but Defendant was not served until September 4, 2020, long after the 90 days allowed had expired. See Def.'s Mem. at 4.

Defendant is correct that service took longer than the 90-day time period set forth in Rule 4(m). However, on June 16, 2020 Plaintiff was granted on extension of time to effectuate service due to the difficulties encountered in locating Defendant. See Dkt. No. 135. Thus, Plaintiff's Complaint and summons were timely served and dismissal on these grounds would be improper. Gerena v. Korb, 617 F.3d 197, 203 (2d Cir. 2010) (holding dismissal of claim due to untimely service was improper where plaintiff had been granted an extension of time to effectuate service).

### C.  Plaintiff's Second Amended Complaint Relates Back to the First Complaint and Is Not Barred by the Statute of Limitations

Defendant argues that Plaintiff's Second Amended Complaint is barred by the statute of limitations and does not "relate back" to the original John Doe Complaint. The Court disagrees.

Plaintiff brings claims for violation of his Eighth Amendment rights under 42 U.S.C § 1983. See Second Am. Comp. Section 1983 does not provide a statute of limitations. Instead, courts apply the statute of limitations for personal injury actions set forth by the state in which the action accrued. See Owens v. Okure, 488 U.S. 235, 249–51(1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). This action accrued in New York State, which sets forth a 3-year statute of limitations for personal injury actions. See Pearl, 296 F.3d at 79; N.Y. C.P.L.R. § 214.

Plaintiff's claims stem from an incident that occurred May 16, 2014 and he filed his initial Complaint January 17, 2017. The Second Amended Complaint was filed December 3, 2019, well after the statute of limitations expired on May 16, 2017. Thus, as Defendant correctly

states, the question becomes, "whether the Second Amended Complaint now at issue can properly relate back to the First Complaint" which set forth unnamed, John Doe defendants. Def.'s Mem. at 5.

To relate back to the date of an original complaint, an amended pleading must "meet the requirements of Rule 15(c)." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). F.R.C.P. 15(c) has two subdivisions by which an amended pleading naming a new party may relate back to an original pleading: 15(c)(1)(C) and 15(c)(1)(A). See id.

### 1. Rule 15(c)(1)(C) Does Not Allow Relation Back

Rule 15(c)(1)(C) sets forth the general federal standard for relation back when an amendment adds a new party. For an amended pleading to relate back to an original complaint under 15(c)(1)(C), four conditions must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party [knew or] should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within [the 90-day period provided for serving the original summons and complaint], and . . . the original complaint [was] filed within the limitations period.

Ceara v. Deacon, 916 F.3d 208, 214 (2d Cir. 2019) (quoting Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468–69 (2d Cir. 1995)).

Plaintiff's Second Amended Complaint does not meet the requirements of the second and third prongs of the Rule 15(c)(1)(C) test and thus does not relate back to the original Complaint.

Under the second prong, Plaintiff has not shown that Defendant received any notice of this action within 90 days of the filing of the original Complaint. While the original Complaint was filed January 17, 2017, it does not appear that Defendant had any notice of the action until September of 2020 when she received service. Gelormino Aff. at 2. Plaintiff does not argue otherwise. See Pl.'s Resp. Mot. Dismiss. Further, there are no grounds to find Defendant had

constructive notice of the action, which may occur where an added party shares an attorney with a previous party, or the added party's employer was an original party. See Blaskiewicz v. Cty. of Suffolk, 29 F. Supp. 2d 134, 139 (E.D.N.Y. 1998). While the State of New York and Department of Corrections and Community Supervision ("DOCCS") knew of the action in 2017, there are no grounds to impute that knowledge to Defendant because she retired in 2016 prior to the filing of the original complaint, and no longer worked for those entities in any capacity. Def.'s Mem. at 6. Defendant is also not represented by any attorney who previously represented a party with notice of the action.

Likewise, under the third prong, nothing in the record indicates that Defendant knew of the action within 90 days of the Complaint's filing such that she was aware of Plaintiff's mistaken identification and knew she was the proper defendant. See In re Allbrand Appliance & Television Co., 875 F.2d 1021, 1024 (2d Cir. 1989) (observing that where a defendant does not receive notice of an action until after the relevant Rule 15(c) time period has expired "the plain language of Rule 15(c) compel[s] a holding that the amendment did not relate back to the original filing date").

Plaintiff argues that Defendant had notice of the action because she was aware Plaintiff had filed a grievance at Auburn C.F. and was interviewed as part of the investigation. Pl's Sup. Resp at 2. However, the Rule 15(c) notice requirement requires knowledge of the action itself, not merely knowledge of the incident giving rise to the action or the fact that an accusation has been made. See Girau v. Europower, Inc., 317 F.R.D. 414, 422 (S.D.N.Y. 2016) (citing Morel v. Daimler-Chrysler AG, 565 F.3d 20, 26 (1st Cir. 2009)) (denying relation back because "notice requires knowledge of the filing of suit, not simply knowledge of the incident . . . [and plaintiff] confuse[d] knowledge of potential liability with the necessary prerequisite—that [defendant]

knew or should have known about the litigation."); see also Afanador v. United States Postal Serv., 976 F.2d 724, at *3 (1st Cir. Sep. 17, 1992) ("Receipt of appellants' letter demanding administrative resolution of their claims was not notice that appellants had instituted an action, the only relevant notice under Rule 15(c).")

Therefore, the Second Amended Complaint does not relate back to the original Complaint under Rule 15(c)(1)(C).

### 2. 15(c)(1)(A) and CPLR § 1024 Allow Relation Back

Even where Rule 15(c)(1)(C) is not applicable, Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Because NY state law provides a "more forgiving principle of relation back" in the John Doe context compared to Rule 15(c)(1)(C), it may allow for relation back even when such is not allowed under the Federal Rules. See Hogan, 738 F.3d at 518.

Specifically, in addition to the general relation back statute found in New York Civil Practice Law Rules ("CPLR") § 203 (which is interpreted to have very similar requirements to Federal Rule 15(C)(1)(C)), CPLR § 1024 creates a special relation back procedure for claims initially alleged against John Doe defendants. This section states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

CPLR § 1024. New York courts have interpreted this to permit John Doe substitutions nunc pro tunc. Hogan, 738 F.3d at 518–19 (collecting cases).

To utilize CPLR § 1024, a plaintiff "must meet two requirements." Id. at 519. First, the party must "exercise due diligence, prior to the running of the statute of limitations, to identify

the defendant by name." Id. (citing Bumpus v. N.Y.C. Transit Auth., 883 N.Y.S.2d 99, 104

(App. Div. 2nd Dept. 2009)). Second, the party must describe the John Doe defendant "in such

form as will fairly apprise the party that [they are] the intended defendant." Id. Plaintiff has met

both requirements.

a.   Plaintiff Exercised Due Diligence

To exercise due diligence, a plaintiff must "take concrete and timely steps to ascertain a

[defendant's] identity, for example by submitting multiple discovery demands, requests under

state or federal Freedom of Information laws, or requests to the Attorney General's office."

Barrett v. City of Newburgh, 720 F. App'x 29, 33 (2d Cir. 2017) (citing Mabry v. N.Y.C. Dep't

of Corr., No. 5-CV-8133, 2008 WL 619003, at *6 (S.D.N.Y. Mar. 7, 2008)). However, diligence

is not exercised by last minute or token discovery requests. Id. (collecting cases).

Due diligence in the CPLR § 1024 context has generally been found where a Plaintiff

makes reasonable efforts to identify an unnamed defendant prior to the running of the statute of

limitations by contacting either a governmental entity or a named party who has access to

relevant information. See, e.g., Hogan, 738 F.3d at 517 (finding due diligence where, before

statute of limitations expired, plaintiff submitted multiple discovery requests to named

defendants, but defendants failed to fully respond); Medina v. Seiling, No. 14-CV-6034, 2018

WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018) (finding due diligence where, before statute of

limitations expired, plaintiff-inmate made FOIL requests, discovery requests, and requests to the

facility where he was incarcerated). Due diligence has even been found where a plaintiff contacts

a single government official within the statute of limitations period to ascertain a defendant's

identity. See Ceara, 68 F. Supp. 3d at 410–411 (finding due diligence where Plaintiff wrote to

13

inspector general within statute of limitations period to ascertain defendants' identities, but received no response, and kept court apprised of his efforts).

In contrast, courts generally only find a lack of due diligence where a plaintiff has done nothing prior to the running of a statute of limitations to ascertain the identify of an unnamed defendant. See Abreu v. City of N.Y., No. 12-CV-6331, 2018 WL 3315572, at *6 (S.D.N.Y. July 5, 2018) ("[C]ourts in this District typically find a lack of due diligence only where the plaintiff failed to take any action beyond filing his original complaint prior to the expiration of the statute of limitations.") (collecting cases) (quotation marks omitted); see also, e.g., Hall v. Rao, 809 N.Y.S.2d 661, 663 (App. Div. 3rd Dept.) (No due diligence found where "[the] record is utterly devoid of proof documenting what efforts, if any, plaintiffs undertook to identify [defendant] prior to the expiration of the statute of limitations."); Terranova v. Johnson, 444 F. Supp. 3d 477, 483 (W.D.N.Y. 2020) ("Plaintiff has failed to identify any affirmative actions he took to discover [defendants'] identities prior to the expiration of the statute of limitations."). However, a lack of due diligence has also been found where a plaintiff submitted "limited" discovery to a named party, and failed to take any further action when the response to that discovery was inadequate to ascertain the identity of unnamed defendants. Temple v. N.Y. Cmty. Hosp. of Brooklyn, 933 N.Y.S.2d 321, 323 (App. Div. 2nd Dept. 2011).

The boundary of what constitutes § 1024 due diligence is somewhat delineated by the Second Circuit Court of Appeals in Barrett v. City of Newburgh. 720 F. App'x 29 (2d Cir. 2017). The plaintiff in Barrett did undertake some efforts to identify unnamed defendants, but waited over two years after the violation of her rights to begin inquiring into the defendants' identities. Id. at 33. Indeed, the Barrett plaintiff began her efforts only months before the statute of limitations expired, never filed a formal Freedom of Information Act ("FOIA") request with the

city, and did not communicate with the court regarding her progress in ascertaining the names of the defendants. Id. Given these circumstances, the Second Circuit found that "[w]hether [plaintiff's] efforts satisfy the due diligence requirement of § 1024 is a close question on which reasonable fact-finders could disagree." Id.

With these contours of case law defined, it is apparent that Plaintiff did exercise due diligence to ascertain Defendant's identity.

Plaintiff's efforts to identify Defendant began in June 2014, only one month after the incident in question. Plaintiff wrote a letter to the Deputy Commissioner and Chief Medical Officer, Superintendent, and the Nurse Administrator for the prison, Nurse Coryer, inquiring as to the status of the grievance he had filed regarding the incident and asking for assistance in identifying the nurses who had examined him. Dkt. 106-3 at 24–25. In his letter, Plaintiff complained he was being "led along without being told [their] names  . . . ." Id. Sometime prior to September 11, 2014, Nurse Coryer informed Plaintiff that she did not handle grievances and that he should direct inquiries to the Superintendent. Dkt. No. 77 at 40. Around the same time, Plaintiff submitted a FOIL request for his examination records to the Auburn C.F. FOIL officer. Dkt. No. 77 at 43. This request was denied and Plaintiff was instructed to request records directly from the Nurse Administrator instead. Id. However, three months later in December 2014, the DOCCS' Central Office Review Committee ("CORC") accepted Plaintiff's grievance in part and contradicted the FOIL officer's previous instructions, directing Plaintiff to initiate a FOIL request to obtain the identities of the nurses. Id. at 9.

In September 2015, Plaintiff sent yet another FOIL request to the Auburn C.F. FOIL officer who said Plaintiff would get a response in 20 days. Id. at 35. After two months with no

response, Plaintiff again wrote to the FOIL officer, who now, again, directed Plaintiff to contact the medical department directly. Id. at 27.

On January 10, 2016, Plaintiff again wrote the Nurse Administrator for information regarding the investigation of his grievance. Id. at 20, 27. The Nurse Administrator forwarded the request to the FOIL officer. Id. at 20. On February 5, 2016, Plaintiff wrote directly to DOCCS counsel, complaining of being "bounced around from both offices" and unable to get information regarding the investigation. Id. On February 10, 2016, the Superintendent responded, telling Plaintiff that medical FOIL requests needed to be processed "directly in medical." Id. at 39. Plaintiff's last FOIL request was denied February 23, 2016 because "staff conduct grievance investigations are not allowed per policy." Id. at 38.

Plaintiff filed his complaint on January 17, 2017, thus enabling the court to assist in obtaining information regarding the unnamed defendants. See Compl. In April 2017, Plaintiff indicated he had attempted to obtain his medical records from Auburn C.F. but was unable due to insufficient funds. Dkt. No. 11. Plaintiff requested the Attorney General's office be compelled to provide the information requested. See id.

The statute of limitations expired in May 2017, after which Plaintiff continued his efforts to identify the defendants alongside those of the Court and Attorney General's Office. Plaintiff submitted an additional FOIL request to Auburn C.F. in July of 2018, Dkt. No. 87, and sought to subpoena the Attorney General for medical records in January of 2019, see Dkt. No. 101.

Given the above, it is clear Plaintiff undertook "concrete and timely steps to ascertain [the defendant's] identity" by submitting multiple requests under Freedom of Information Laws, several communications to facility officials, and multiple requests to the Attorney General's office. Cf., Barret, 720 F. App'x at 33. This is a far cry from the majority of cases where no

diligence is found, where plaintiffs take no action to identify a defendant prior to the statute of limitations running. It is also very distinct from the facts of Temple, cited by Defendant, where the plaintiff made only "limited" requests and did nothing to follow up when the response to those requests was insufficient. 933 N.Y.S.2d at 323. Further, this case is clearly on the diligent side of the boundary outlined in Barrett, where the plaintiff waited until immediately before the expiry of the statute of limitation to begin inquiry and filed no formal requests. 720 F. App'x at 33. Plaintiff here began his inquiry soon after the incident in question and filed numerous formal requests, seeking information from multiple sources.

Defendant argues that Plaintiff was not diligent because he (1) waited for over a year to serve discovery on the original defendants after filing the original Complaint, (2) waited five and a half months to amend his Complaint after receiving information revealing Defendant's identity, and (3) waited another ten months after filing the second amended complaint to serve Defendant. Def.'s Sup. Mem. at 7. However, the delays in service were clearly due to difficulties the Court, the Attorney General's Office, and the U.S. Marshals had in obtaining accurate address information for the respective defendants, including for Defendant Gelormino, and serving them with process. See Dkt. Nos. 19, (noting failure of DOCCS to provide address information for Pangello and Dugan), 27 (Dugan summons returned unexecuted), and 127 (Gelormino summons returned unexecuted). These difficulties led the Court to grant Plaintiff multiple extensions in time to serve the defendants. See, e.g., Dkt. Nos 32, 135. Further, Plaintiff's delay of five and a half months in moving to amend after receiving documents revealing Defendant's identity is not so egregious as to render his conduct not diligent given his status as a pro se inmate. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to

protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."). Given Plaintiff's otherwise persistent attempts to discover Defendant's identity, any delays were likely due to "[Plaintiff's] misunderstanding of the legal system or his lack of access to the proper facilities while incarcerated, and not due to any flippancy as to the time constraints." See Medina, 2018 WL 1603857, at *7.

Because Plaintiff, a pro se inmate, submitted numerous FOIL requests and other requests to the facility in which he was incarcerated, made requests of the Court, filed his complaint prior to the running of the statute of limitations allowing the court to issue a Valentin order, and continued to attempt to discover the defendants' identities after the statute of limitations had run, the Court finds Plaintiff acted with due diligence for purposes of CPLR § 1024. See id. (finding pro se inmate had exercised due diligence where he made "at least one" FOIL request, multiple requests to a court, numerous requests to the facility where he was incarcerated, and filed his complaint prior to the running of the statute of limitations, thus allowing a Valentin order from the court).

b. Plaintiff Sufficiently Described Defendant in the Original Complaint

Under the second requirement of CPLR § 1024 a plaintiff must describe the John Doe defendant "in such form as will fairly apprise the party that [they are] the intended defendant." Hogan, 738 F.3d at 519, citing Bumpus, 883 N.Y.S.2d at 104.

Defendant cites to Cotto v. City of New York, 803 F. App'x. 500 (2d Cir. 2020) to argue that this prong of the CPLR § 1024 test requires that the added defendant "knew or should have known that, but for a . . . mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." Def.'s Sup. Mem. at 8–9. Put differently, if Defendant's and the Cotto Court's interpretation of § 1024 is correct, a defendant must have

actual knowledge of an original John Doe complaint—or otherwise be constructively chargeable with such knowledge—for a later amended complaint to relate back under § 1024. See Cotto, 803 F. App'x. at 503 ("Because Cotto has not shown that [the defendant] knew or should have known about the lawsuit and that he was the intended defendant, she cannot use Fed. R. Civ. P. 15(c)(1)(A), through CPLR § 1024, to render her complaint timely . . . .").

However, the Court is unpersuaded by the reasoning in Cotto.[1] In supporting its assertion that § 1024 requires a party knew or should have known of the suit, the Cotto Court cites to Buran v. Coupal, 87 N.Y.2d 173 (1995) and Kirk v. University OB-GYN Assocs., Inc., 960 N.Y.S.2d 793 (App. Div. 4th Dept. 2013). Cotto, 803 F. App'x. at 503. However, in Buran, the New York Court of Appeals was setting forth the requirements for relation back under CPLR § 203, New York's general relation back statute which has requirements very similar to the Federal relation back statute. Buran, 87 N.Y.2d at 177–79. The Buran Court never mentioned CPLR § 1024, but rather referenced the relation back doctrine "as codified" in CPLR § 203 specifically, and set forth three conditions that must be met to make use of that doctrine. Id. These three conditions largely mirror the federal rule and include the notice requirements to which Cotto refers. Id. Likewise, in Kirk, the Fourth Department sets forth similar notice requirements for the general relation back rule and cites to Buran and CPLR § 203. Kirk, 960 N.Y.S.2d at 795.

The only case cited by the Cotto Court that actually deals with relation back under CPLR § 1024 is Bumpus. However, in Bumpus, the Second Department merely sets forth the requirement stated above, that under CPLR § 1024 a plaintiff must describe the John Doe defendant "in such form as will fairly apprise the party that [they are] the intended defendant."

---

[1] While the Cotto decision emanates from the Second Circuit Court of Appeals, it is a summary order, and therefore does not have precedential effect. See Second Circuit Court of Appeals Local Rule 32.1.1(a) ("Rulings by summary order do not have precedential effect.").

Bumpus, 883 N.Y.S.2d at 104. Bumpus makes no mention of a requirement that the defendant

know, or should have known, of the original complaint. Therefore, the requirements that the

Cotto Court reads into CPLR § 1024 are not supported by the cases it cites.

The question then becomes, does the fair apprisal requirement of the CPLR § 1024 test, if

applied by a New York State court,[2] (1) require that a plaintiff know, or should have known, of

the initial suit and that they were the intended defendant, or, (2) merely require that the

description contained in the complaint itself be of sufficient quality that, were the defendant to

read the complaint, they would know they were the defendant referenced?

An examination of decisions from New York State courts establishes that the second

interpretation is correct.

Rather than focusing on what the newly-added defendant knew or should have known

when evaluating relation back under CPLR § 1024, New York State courts focus on the content

of the complaint itself and what the defendant would have known had they read it. For example,

the First Department has held that a plaintiff may proceed under CPLR § 1024 if "the actual

defendants are adequately described and would have known, *from the description in the*

*complaint*, that they were the intended defendants[.]" Lebowitz v. Fieldston Travel Bureau, Inc.,

581 N.Y.S.2d 302, 303 (App. Div. 1st Dept. 1992) (emphasis added). Likewise, the Third

Department in Olmsted v. Pizza Hut of Am., Inc. found the second prong of § 1024 was not met

because "[i]f [defendant] had read the complaint, he would not have known that [he] was an

intended defendant . . . ." 813 N.Y.S.2d 241, 243 (App. Div. 3rd Dept. 2006). Indeed, New York

---

[2] "The role of the federal district court judge, when confronted with an issue of state law, is . . .
to 'ascertain from all the available data what the state law is and apply it [as a state court
would].'" Dacosta v City of New York, 296 F. Supp. 3d 569, 587 (E.D.N.Y. 2017) (citing West
v. American Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).

case law is replete with opinions that focus on the whether the content of the complaint is sufficiently descriptive, rather than what a newly added defendant knew or should have known. See e.g., Goldberg v. Boatmax://, Inc., 840 N.Y.S.2d 570, 571 (App. Div. 1st Dept. 2007) ("The summons and complaint served on one of the intended defendants did not satisfy CPLR § 1024 since *its allegations* did not fairly apprise that individual that he was their target.") (emphasis added); LeBlanc v. Skinner, 955 N.Y.S.2d 391, 396 (App. Div. 2nd Dept. 2012) (in a case involving a blog post, use of defendant's screenname in the original complaint meant that "the original complaint was sufficient to have apprised Wayne Skinner that he was one of the intended defendants" under CPLR § 1024); Maurro v. Lederman, 795 N.Y.S.2d 867, 868 (Sup. Ct. 2005) ("The description required by CPLR 1024 must be sufficiently complete to identify the defendant and thereby provide [] notice and opportunity to defend.").

Also, despite its opinion in Cotto, the Second Circuit Court of Appeals has likewise focused on the content of the complaint when applying CPLR § 1024, rather than the knowledge of the defendant. See e.g., Hogan, 738 F.3d at 519 (finding the fair appraisal requirement of CPLR § 1024 met where the complaint "provides enough detail to give notice to the John Does that they are the intended defendants."). District courts in the Second Circuit have placed similar emphasis on the contents of the complaint. See e.g., Ceara v. Deacon, 68 F. Supp. 3d 402, 411–412 (S.D.N.Y. 2014) (finding fair appraisal requirement met because "Plaintiff's detailed description of the incident in the original Complaint provided sufficient information . . ."); Abreu, No. 12-CV-6331, 2018 WL 3315572, at *6 (S.D.N.Y. July 5, 2018) (Requirements of CPLR § 1024 met because "plaintiffs' original complaint included enough detail to put [defendants] on notice that they were the intended defendants."); Duncan v. City of New York,

No. 11-CV-3901, 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (finding defendant fairly apprised under § 1024 due to details contained in complaint).

Having set forth what the second prong of the § 1024 test requires, it is clear Plaintiff's Complaint meets this standard, which has been described as "not particularly arduous." Abreu, 2018 WL 3315572 at *6.

The original Complaint sets forth sufficient detail such that Defendant "would have known, from the description in the complaint, that [she was] the intended defendant[]." Lebowitz, 581 N.Y.S.2d at 303. The original Complaint gives the date of the incident as May 16th, 2014 and the location as the medical center at Auburn Correctional Facility. Comp. at 4. The Complaint describes Defendant as the female nurse on duty that night during the 3pm to 11pm shift alongside a male nurse. Id. Plaintiff then describes the incident in question, specifying that Defendant threatened Plaintiff, dug her fingers into his side, and sent him back to his cell. Id. at 4–5. Complaints that have set forth the time, location, and a general description of the events and the defendant have been found to meet this standard. See e.g., Maurro, 795 N.Y.S.2d at 868 (description was sufficient where complaint described defendant as a doctor who treated plaintiff at a specific office on a specific day); see also e.g., Ceara, 68 F. Supp. at 412 (description sufficient where complaint described the "date, time, and location" of the incident) (internal citations omitted); Hogan, 738 F.3d at 519 (sufficient description where the complaint "describe[d] with particularity the date, time, and location of the alleged incident and also included substantial detail concerning the appearance of [assailants]."); Abreu, 2018 WL 3315572, at *6 (description was sufficient where "[p]laintiffs clearly alleged the date, time, and location of the incident" and actions of the defendants); Duncan, 2014 WL 3530858, at *3 (description found adequate where complaint set forth date, location, and actions of defendant).

Because Plaintiff exercised due diligence in seeking to discover Defendant's identity and the original Complaint was sufficiently descriptive so as to fairly apprise Defendant that she was the intended defendant, Plaintiff's Second Amended Complaint properly relates back to his initial Complaint under F.R.C.P. 15(c)(1)(A) and CPRL § 1024 and is not barred by the statute of limitations.

### D.  Plaintiff's Second Amended Complaint Properly States a Claim Upon Which Relief Can be Granted

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). In reviewing the sufficiency of a *pro se* complaint such as Plaintiff's, the court must conduct the review "with 'special solicitude,' interpreting the complaint to raise the 'strongest claims that it suggests.'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

To establish an Eighth Amendment violation due to inadequate health care, an inmate must prove "deliberate indifference to [his] serious medical needs." Chance v. Armstrong, 143

F.3d 698, 702 (2d Cir. 1998) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). The deliberate

indifference requirement has both an objective and subjective prong. The objective prong

requires that "the alleged deprivation must be sufficiently serious, in the sense that a condition of

urgency, one that may produce death, degeneration, or extreme pain exists." <u>Hill</u>, 657 F.3d at

122 (quoting <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996)). The subjective prong

requires that the official act with a sufficiently culpable state of mind in that they must "know[]

of and disregard[] an excessive risk to inmate health or safety." <u>Id.</u> (quoting <u>Farmer v. Brennan</u>,

511 U.S. 825, 837 (1994)).

Plaintiff's condition as alleged in his Second Amended Complaint is sufficiently serious

to meet the objective prong of this test. "There is no settled, precise metric to guide a court in its

estimation of the seriousness of a prisoner's medical condition." <u>Smith v. Carpenter</u>, 316 F.3d

178, 187 (2d Cir. 2003) (quoting <u>Brock</u>, 2003 WL 23400 at *3). However, Plaintiff asserts in his

complaint that his pain was so great he had to be taken to Auburn C.F.'s medical department on a

stretcher and that he convulsed in pain while being examined. Second Am. Comp. at 2–3. This

creates a reasonable inference that Plaintiff's condition was one that caused extreme pain.

Plaintiff also alleges that as soon as he was seen by his regular medical provider, he was

immediately sent to Auburn Community Hospital where he received emergency surgery. <u>See id.</u>

at 3. A reasonable factfinder could thus infer that Plaintiff's condition was urgent, had the

potential to degenerate quickly, and could have led to death. <u>See Liscio v. Warren</u>, 901 F.2d 274,

277 (2d Cir. 1990) (holding that a reasonable factfinder could find deliberate indifference where

medical issue was "life-threatening and fast-degenerating" condition), <u>overruled on other</u>

<u>grounds by Caiozzo v. Koreman</u>, 581 F.3d 63 (2d Cir. 2009). Further, the Second Amended

Complaint asserts that Plaintiff was unable to eat, drink, or leave his cell after being sent away

by Defendant. Second Am. Comp. at 3. It is thus reasonable to infer that Defendant's failure to treat Plaintiff's condition "result[ed] in . . . the unnecessary and wanton infliction of pain" which is sufficient to establish a serious medical need. Smith, 316 F.3d at 185 (quoting Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000)).

Plaintiff's Second Amended Complaint also meets the subjective prong of this test. To show that a medical provider knew of and disregarded an excessive risk to inmate safety, the inmate must show that (1) a prison medical care provider was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and (2) the provider actually drew the inference. Chance, 143 F.3d at 702 (citing Farmer, 511 U.S. at 837 (1994)).

Plaintiff's Second Amended Complaint alleges that, on the night of May 16, 2014, he was brought to the medical department of Auburn C.F. on a stretcher due to his inability to stand and convulsed in pain after Defendant probed his abdomen. See Second Am. Comp. at 3. Plaintiff alleges the pain and convulsions were so severe he had to grab onto Defendant to keep from falling. Id. Thus, a reasonable factfinder could find that Defendant was aware of facts from which she could infer Plaintiff had a serious condition that caused great pain and a substantial risk of serious harm existed. Likewise, because the Second Amended Complaint makes clear that Defendant witnessed Plaintiff's pain and convulsions, it is reasonable to infer that Defendant did in fact draw the inference that Plaintiff's condition was serious and there was a risk of serious harm. In sum, a reasonable factfinder could infer that, despite observing symptoms indicating Plaintiff was in extreme pain, Defendant did not take Plaintiff's condition seriously and was thus deliberately indifferent in choosing not to offer any treatment knowing Plaintiff would not be seen by a medical provider for several days. See Hathaway, 37 F.3d at 68 (holding that a reasonable factfinder could find deliberate indifference where, despite inmate's complaints of

pain, prison medical staff "did not take [plaintiff's] condition seriously" and did not take steps to address it); see also Liscio, 901 F.2d at 277 (finding a jury could find deliberate indifference where detention center doctor was aware of symptoms indicating inmate had serious condition, but ignored the inmate for three days).

Additionally, Plaintiff's allegations lead to a reasonable inference that Defendant was frustrated with Plaintiff. Defendant indicated before examining Plaintiff that she believed he was "abusing medical 'Emergency Sick-Call' procedure," and then, during examination, "forcefully dug her fingers into the infected area." Second Am. Comp. at 2–3. This leads, not only to an inference that Defendant was deliberately indifferent to Plaintiff's serious condition, but to an inference that Defendant intentionally caused Plaintiff excruciating pain. This is the exact type of unnecessary and wanton infliction of pain that implicates the Eighth Amendment, Farmer, 511 U.S. at 834, and which is more than sufficient to meet the standard for deliberate indifference, Hathaway, 37 F.3d at 66 ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

Defendant argues that, because Plaintiff stated his regular medical provider examined him days later "in a similar fashion as RN, Dianne Gelormino," and Plaintiff did not complain about that examination, Plaintiff has admitted Defendant's examination was proper. Def.'s Mem. at 10. However, Defendant omits a crucial part of Plaintiff's allegation in his Second Amended Complaint, which is that his regular provider "examined his abdominal region in a similar fashion as RN, Dianne Gelormino *only with consideration for the Plaintiffs pain and discomfort*." Second Am. Comp. at 3 (emphasis added). This statement thus does not serve to excuse Defendant's actions but to highlight exactly what was improper about them, not the mere palpation of the stomach, but the alleged intentional, or indifferent, infliction of pain.

It may be the case that Defendant's actions were medically reasonable as Defendant argues and that Plaintiff's claims will be shown to be unsupported at a later stage of the proceedings. However, at this stage the Court must make all inferences in favor of Plaintiff and may not dismiss this case "unless it is clear that it would be impossible for the plaintiff to make out a legally cognizable claim." Chance, 143 F. 3d at 703; see also Allaire, 433 F.3d 249–50. Under this standard, Plaintiff has alleged sufficient facts to state a claim for violation of his Eighth Amendment rights. Thus, the Court denies Defendant's motion to dismiss for failure to state a claim.

## IV.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion to set aside default judgment and dismiss the second amended complaint (Dkt. No. 151) is **GRANTED IN PART** and **DENIED IN PART**. The Clerk's default entered December 30, 2020 (Dkt. No 147) is hereby **SET ASIDE**. However, Defendant's request to dismiss the Second Amended Complaint is **DENIED**; and it is further

**ORDERED,** that Plaintiff's motions for default judgment (Dkt. No. 150, 156) are **DENIED** as moot.

**IT IS SO ORDERED.**

DATED:      September 30, 2021
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge

27